530 So.2d 980 (1988)
Brian RIGGS, et al., Appellants,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, FLORIDA REAL ESTATE COMMISSION, Appellee.
No. 87-2400.
District Court of Appeal of Florida, Fifth District.
August 11, 1988.
Rehearing Denied September 12, 1988.
Anthony J. Gargano of Leasure & Gargano, P.A., Ft. Meyers, for appellants.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Manuel E. Oliver, Asst. Atty. Gen., Orlando, for appellee.
COWART, Judge.
The question in this case is whether a claim against the Real Estate Recovery Fund (§ 475.483(1)(c), Fla. Stat.) is disqualified because the claim relates to a real estate transaction in which a licensed real estate broker was acting on his own behalf in selling his own property.
Michael Gaylord, acting as a licensed real estate salesman, advertised lots for sale in Lee County, Florida. Appellant Brian Riggs, a resident of Maryland, read the advertisement and came to Florida and to the real estate office where Mr. Gaylord worked for a real estate broker, to inquire about the advertised lots. After being shown the lots, Riggs offered to buy one lot for $45,000 and gave a $1,000 deposit to Gaylord who prepared a proposed written contract between the lot owner and Riggs. However, Riggs desired to have most of the purchase price financed and Gaylord took Riggs to a local bank where Riggs made a loan application. When the loan application was later denied, Gaylord contacted Riggs and stated that if Riggs would pay Gaylord an additional $8,000, he, Gaylord, would secure financing in Gaylord's name so that Riggs could acquire the lot. Riggs paid Gaylord the $8,000. With the $9,000 of Riggs' money, Gaylord arranged to borrow $28,000 from the bank and Gaylord and his wife bought the lot from the original owner for $35,000 and, as sellers, on June 24, 1985, entered into a written unrecorded contract for deed with Riggs and wife, selling the lot for $45,000 with $9,000 down and the balance of $36,000 payable in monthly installments of $449.59 each on account of principal and interest at an adjusted rate 1% above sellers' rate. Riggs paid Gaylord six months of installments of $449.59. Gaylord made two payments of about $330.00 each on the bank mortgage, then defaulted. The bank commenced mortgage foreclosure proceedings, and by chance, learned of the Riggses' interest and joined them in the foreclosure action. The Riggses cross-claimed and obtained a money judgment against the Gaylords and filed a claim against the Florida Real Estate Recovery Fund. The Florida Real Estate Commission denied the claim and the Riggses appeal.
Section 475.483(2)(c), Florida Statutes, provides that:

*981 (2) A person is not qualified to make a claim for recovery from the Real Estate Recovery Fund, if:
* * * * * *
(c) Such person's claim is based upon a real estate transaction in which the licensed broker or salesman was acting on his behalf with respect to the property owned or controlled by him.
Starting its finding of facts with the agreement titled "Contract for Deed" dated June 24, 1985, the Commission found that the Riggses' claim against the Real Estate Recovery Fund was based on a real estate transaction in which Gaylord was acting on his own behalf with respect to property owned or controlled by him and that the above statutory exclusion disqualified the Riggses' claim.
If it is assumed that Gaylord owned the lot in question on June 24, 1985, and the real estate "transaction" in this case is taken as commencing with the execution of the contract between Gaylord and Riggs on that date, then, of course, the view of the Commission is correct. However, the facts as cited above are not contested and we construe the statutory reference to "real estate transaction" to refer to a broader picture. "Transaction" is a vague term referring generally to a series of events of undefined commencement and conclusion. In this case, we believe the "transaction" in question did not commence with Gaylord acting (i.e., advertising) on his own behalf to sell property owned by himself. The stage for this drama was set with Gaylord, acting as a licensed real estate salesman, advertising to sell a lot owned by a third party. The transaction continued with Riggs responding to the licensed salesman's advertisement and showing a sincere interest in buying but with a financing problem. At this point, the "transaction" took a bad turn. The licensed salesman with his superior position of knowledge and personal contacts with the original owner and the prospective purchaser and the local bank, saw an opportunity to abandon his role as a licensed salesman for a licensed broker and interjected himself into the "transaction" as a principal to make more money than a mere commission. The salesman, Gaylord, using the prospective purchaser's earnest money deposit and money borrowed against the lot in question, ran in front of[1] the purchaser, bought the lot from the salesman's true client, the original owner, and simultaneously contracted directly with Riggs as purchaser.
We view the facts as demonstrating that a licensed salesman, acting as such in a real estate transaction, improperly acquired the property in question and then closed the transaction on his own behalf and for his own profit. If, under these circumstances, the statutory language "real estate transaction" is narrowly construed to exclude a claim against the Real Estate Recovery Fund, then many claims will be disqualified which we believe it was the intent of the legislature to include.
The order of the Commission denying the Riggses' claim is reversed and the cause is remanded for further proceedings consistent with the opinion.
REVERSED and REMANDED.
ORFINGER and COBB, JJ., concur.
NOTES
[1] This unethical conduct by a broker is aptly described as "front running".